Adam G. Bridge
Office of the Federal Public Defender, District of Utah
46 W. Broadway, Ste. 110
Salt Lake City, UT 84101
Phone: (801) 524-4010 | Fax: (801) 524-4060
Email: adam_bridge@fd.org

## UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>vs.<br><br>John Eugene Walker,<br><br>                    Defendant. | **Defendant's Resentencing Memorandum**<br><br><br>Case No. 2:13-cr-379 CW |

Mr. Walker is before the Court for resentencing. This memorandum addresses the history of the case, the scope of remand, and the sentencing factors and legal authorities relevant to the Court's resentencing decision. Those factors and authorities fully support the following sentence: five years' probation—including a substantial period of home confinement—community service, a modest fine, a $200 special assessment, and $3,695.50 in restitution.[1]

### Background

Mr. Walker's case dates back to May 2013, which merits a brief summary of its factual and procedural history.

---

[1] Mr. Walker has already made eighteen monthly restitution payments.

1

1.     *The Bank Robberies*

On May 3, 2013, Mr. Walker walked into a U.S. Bank in Salt Lake City disguised as a construction worker.[2]  He approached a teller and demanded money in an aggressive manner.[3]  The teller gave him $2,152.50, which he placed in a messenger-style bag lined with tin foil.[4]  Mr. Walker left the bank and used the money to buy drugs and pay overdue bills.

On May 22, 2013, Mr. Walker struck again. This time it was a Zion's Bank in Sandy.[5]  This time he was dressed as a woman.[6]  As before, he approached a teller and forcefully demanded money.[7]  He made off with $1,543.00, which he again used to buy drugs and pay delinquent bills.

Authorities soon received a tip from a local car dealership.[8]  They zeroed-in on Mr. Walker and arrested him at work. Police found drugs and drug paraphernalia, including syringes, in his lunch box.[9]  Post-*Miranda*, Mr. Walker gave a detailed confession and apologized to those affected by his actions.

2.     *Procedural History*

On May 24, 2013, Mr. Walker appeared on a complaint.[10]  The complaint

---

[2]  Presentence Report (PSR), ECF No. 39, ¶ 5
[3]  *Id.*
[4]  The tin foil was intended to defeat any GPS tracking devices.
[5]  *Id.* at ¶ 7.
[6]  *Id.*
[7]  *Id.*
[8]  *Id.*
[9]  *Id.*
[10]  Complaint, ECF No. 1.

alleged two counts of bank robbery.[11]  Magistrate Judge Furse appointed counsel, scheduled an arraignment and detention hearing for May 30, 2013, and remanded Mr. Walker to Marshal's custody.[12]

On May 30, 2013, Mr. Walker pled not guilty to the bank robberies and moved to continue his detention hearing.[13]  Judge Furse granted the continuance and detained Mr. Walker pending further proceedings.[14]

On June 25, 2013, Judge Furse held a detention hearing.[15]  The government argued for detention based on the Pretrial Services Report. Mr. Walker proffered additional evidence about his employment, history of substance abuse and mental health treatment, and recent success during a prior term of supervised release. Judge Furse found Mr. Walker a manageable risk of danger and non-appearance and released him on conditions.[16]

While on pretrial release, and with the Court's approval, Mr. Walker and his then-fiancé moved to Shelby, Ohio. On December 11, 2013, he returned to Utah and pled guilty as charged.[17]  The Court scheduled sentencing for February 13, 2014.[18] On December 31, 2013, Mr. Walker moved to continue sentencing for financial reasons.[19]  The Court continued sentencing to May 13, 2014.[20]

---

[11] *Id.*
[12] Minute Entry, ECF No. 3.
[13] Indictment, ECF No. 6; Minute Entry, ECF No. 8.
[14] *Id.*
[15] Minute Entry, ECF No. 13.
[16] *Id.*; Order Setting Conditions of Release, ECF No. 14.
[17] Minute Entry, ECF No. 19.
[18] *Id.*
[19] Motion to Continue Sentencing Hearing, ECF No. 22.

On April 28, 2014, Mr. Walker was arrested for driving under the influence in Ohio.[21] Pretrial Services filed a petition alleging various violations of his pretrial release, including the DUI and some missed drug tests.[22] Immediately before sentencing, Mr. Walker appeared before Judge Furse and admitted violating the terms of his pretrial release.[23] Later, the Court agreed to continue sentencing to allow Mr. Walker to participate in a long-term residential treatment program.[24] Sentencing was reset for July 27, 2015.[25]

Mr. Walker spent the next thirteen months in a faith-based treatment program in Lansing, Michigan. After graduating on June 5, 2015, he moved to continue sentencing again, citing financial issues associated with his time in treatment.[26] The Court continued sentencing to September 22, 2015.[27]

On September 22, 2015, the Court sentenced Mr. Walker to time served, 36 months of supervised release, and a $200 special assessment.[28] The Court also ordered $3,695.50 in restitution.[29] The government objected to Mr. Walker's sentence and appealed to the Tenth Circuit.[30] The Tenth Circuit vacated Mr. Walker's sentence and remanded for resentencing in accordance with its opinion.[31]

---

[20] Order Granting Motion to Continue Sentencing Hearing, ECF No. 23.
[21] Petition and Order for Action on Conditions of Pretrial Release, ECF No. 27.
[22] *Id.*
[23] Minute Entry, ECF No. 31.
[24] Minute Entry, ECF No. 32.
[25] *Id.*
[26] Second Motion to Continue Sentencing, ECF No. 36.
[27] Order Granting Second Motion to Continue Sentencing, ECF No. 37.
[28] Judgment, ECF No. 43.
[29] *Id.*
[30] Minute Entry, ECF No. 42; Notice of Appeal, ECF No. 45.
[31] Judgment, ECF No. 51-1.

## Scope of Remand

The threshold issue in any resentencing is the scope of remand. When a defendant's sentence is vacated on appeal and remanded for resentencing, the trial court begins anew with *de novo* proceedings.[32]  Those proceedings are governed by the mandate rule.[33]  The mandate rule "requires trial court conformity with the articulated appellate remand."[34]  When the mandate doesn't specifically limit the scope of resentencing, the trial court has the inherent discretionary power to revisit all aspects of a defendant's sentence.[35]

 In Mr. Walker's case, the Tenth Circuit reversed and "remanded for resentencing consistent with [its] opinion."[36]  The second time around, the Court must specifically address "punishment, general deterrence, incapacitation, respect for the law, and avoidance of unwarranted sentencing disparities," but the Court isn't required to impose a particular sentence.[37]  With that mandate in mind, Mr. Walker turns to the sentencing factors and authorities cited in the Tenth Circuit's opinion.

## Mr. Walker's Sentence

Mr. Walker appreciates the difficult task before the Court; however, 18 U.S.C. § 3553(a) and the Supreme Court's post-*Booker* sentencing decisions provide a clear path to the sentence he seeks.

---

[32] *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1999).
[33] *United States v. Hicks*, 146 F.3d 1198, 1201-03 (10th Cir. 1998).
[34] *Id.* (internal citation omitted).
[35] *Id.*
[36] *United States v. Walker*, 844 F.3d 1253, 1260 (10th Cir. 2017).
[37] *Id.* at 1259.

Every federal sentence is guided—and circumscribed—by the parsimony principle. A defendant's sentence must be "sufficient, but no greater than necessary, to comply with the purposes [of sentencing] set forth in 18 U.S.C. § 3553(a).[38] Underlying this principle is the notion that "every convicted person [is] an individual and every case [is] a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue."[39]

Consistent with this principle, the Court must reconsider "seven factors": (1) offense and offender characteristics; (2) the need for the sentence to reflect the basic aims of sentencing—including the seriousness of the offense, promoting respect for the law, retribution, deterrence, incapacitation, and rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) policy statements promulgated by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution.[40]

Those factors take on an added dimension when a defendant's sentence is set aside on appeal. At resentencing, "a district court may [also] consider evidence of a defendant's rehabilitation since his prior sentencing."[41]  Post-sentencing rehabilitation often provides the most up-to-date picture of a defendant's "history and characteristics"[42]  And in assessing the need to promote deterrence, incapacitation, and rehabilitation, "there [may be] no better evidence" than an

---

[38] 18 U.S.C. § 3553(a).
[39] *Koon v. United States*, 518 U.S. 81, 113 (1996).
[40] *Walker*, 844 F.3d at 1256.
[41] *Pepper v. United States*, 562 U.S. 476, 490 (2011).
[42] *Id.*

offender's post-offense conduct."[43]

## 1.    *The Sentencing Guidelines*

We start, as always, with the sentencing guidelines.[44] Mr. Walker's advisory guideline range—151 to 188 months—is grossly unjust given his age and post-offense rehabilitation. To its credit, the government acknowledged this at Mr. Walker's first sentencing hearing.[45] But as the Tenth Circuit reminds us, the guidelines are still relevant to crafting a sentence that promotes just punishment, general deterrence, and consistency among similarly-situated defendants. Sentences are reviewed for substantive reasonableness based, in part, on their relationship to the guidelines.

In Mr. Walker's case, the guidelines treat him as a "career offender" and recommend an extremely harsh sentence.[46] Mr. Walker's case exemplifies why just 27.5 percent of career offenders are sentenced within their recommended guideline range.[47]

The career offender guideline is deeply flawed. The Commission openly acknowledges that it isn't the product of empirical research; it's a political directive.[48] In 1984, Congress directed the Commission to create guidelines that punish certain repeat offenders "at or near the maximum term authorized by [§

---

[43] *Id.* at 491 (internal citation omitted).
[44] *Rita v. United States* 551 U.S. 338, 347-48 (2007).
[45] Transcript of Sentencing Hearing, September 22, 2015, ECF No. 40 at 11-12.
[46] PSR ¶¶ 26, 48, and 67.
[47] U.S. Sent. Comm., *Report to Congress: Career Offender Sentencing Enhancements*, August 2016, at 12.
[48] U.S. Sent. Comm., *Report to Congress: Career Offender Sentencing Enhancements* at 12.

3581(d)]," regardless of the other statutory sentencing factors.[49]

The Commission wants to amend the career offender guideline. In its 2016 report to Congress, the Commission conceded that the career offender guideline recommends unduly harsh sentences for some defendants and fails to meaningfully distinguish between different types of offenders and their criminal records.[50]  If the Commission doesn't put much stock in the career offender guideline, the Court shouldn't either.

Fortunately, there's an easy fix. The Court has the discretionary power to not apply the career offender guideline.[51] Without career offender, the "starting point" and "initial benchmark" for sentencing Mr. Walker would be 77-96 months.

2.    *Offense and Offender Characteristics*

After applying the sentencing guidelines, the first statutory sentencing factor to consider is 18 U.S.C. § 3553(a)(1), which is comprised of two distinct sub-factors: the nature and circumstances of the offense and the history and characteristics of the defendant.[52]

A.    <u>Nature and Circumstances of the Offense</u>

According to the Tenth Circuit, the nature and circumstances of Mr. Walker's

---

[51] *Id.*

[50]  *Id.* at 7.

[51]  *See, e.g., Pepper*, 562 U.S. at 501 ("[O]ur post-*Booker* decisions make clear that a district court may in appropriate cases impose a non-Guideline sentence based on disagreement with the Commission's views");*United States v. Corner*, 598, F.3d 411 (7th Cir. 2010) (en banc) (sentencing court is entitled to disagree with the career offender guideline, just as it may disagree with the crack/powder ratio, because it doesn't equate with a statute); *United States v. Woody*, 2010 WL 2884918, *9 (D. Nebraska, July 20, 2010) (declining to apply the career offender guideline because its application results in a sentence "excessively harsh" given defendant's offense conduct and criminal history).

[52]  18 U.S.C. § 3553(a)(1).

crimes "weighs against a time-served sentence."[53] At resentencing, the question is whether this factor necessarily requires a term of imprisonment, and the answer is no.

On a macro-level, bank robbery is a very serious crime. The statutory maximum is twenty years in prison.[54] The Sentencing Commission considers it a "crime of violence."[55] Bank robberies can involve guns and violence. Employees and witnesses can be hurt or traumatized.

But not every bank robbery is a scene from *Heat*. More often than not, bank robberies don't involve meticulous planning and execution. More often than not, they're carried out by "intimidation" rather than "force and violence."[56] And more often than not, bank robbers are desperate, drug-addicted people on the verge of personal ruin.

The bank robbery statute acknowledges this reality. 18 U.S.C. § 2113(a) encompasses a wide range of criminal conduct. There's also no mandatory minimum associated with bank robbery—meaning that, for some bank robberies, Congress contemplated sentences without imprisonment.

On a micro-level, Mr. Walker's bank robberies are standard fare for this district. His robberies involved minimal planning and sophistication. He committed them by pure intimidation—knowing from experience that tellers readily acquiesce

---

[53] *Id.* at 5.
[54] 18 U.S.C. § 2113(a).
[55] USSG §4B1.2(a)(2).
[56] 18 U.S.C. § 2113(a).

to bank robbers' demands. And he committed them while using methamphetamine and other controlled substances.

On remand, the Court must start where the Court of Appeals left off—with a finding that the nature and circumstances of Mr. Walker's offenses weighs against a time-served sentence. That doesn't necessarily mean Mr. Walker has to go to prison. To the contrary, it would be improper for the Court to ground Mr. Walker's sentence "solely on one factor."[57]  At most, the nature and circumstances of Mr. Walker's offenses is just one factor in the overall sentencing scheme.

B.    Mr. Walker's History and Characteristics

It's easy to dismiss Mr. Walker as a serial bank robber.[58]  He's repeatedly committed the same crime following a characteristic, predictable behavior pattern. But justice requires us to consider more than his criminal acts.

As Mr. Walker tells it, some of his first childhood memories are of getting drunk in his parents' bar.[59]  He started smoking marijuana at ten years old—an age when most kids don't even know what marijuana is.[60]  He found methamphetamine in his early twenties and he's been addicted ever since.[61]  Mr. Walker has lost two brothers to drug addiction.[62]

There's no minimizing Mr. Walker's criminal history. He's been in trouble

---

[57]  *Walker*, 844 F.3d at 1259 (internal citation omitted).
[58]  *Id.* at 1255.
[59]  PSR ¶ 61.
[60]  *Id.*
[61]  *Id.*
[62]  *Id.*

with the law since the early 1970's.[63]  He's committed numerous felonies, including

more than a dozen bank robberies. He's served time in Nevada State Prison, Utah

State Prison, and the Federal Bureau of Prisons.[64]

Mr. Walker also has mental health issues. He's been diagnosed with Attention

Deficit Hyperactivity Disorder, Bipolar Disorder, Post Traumatic Stress Disorder,

and Antisocial Personality Disorder.[65]

You wouldn't know any of that by looking at Mr. Walker today.[66]  The changes

he's made in the last four years are nothing short of a metamorphosis. The Court of

Appeals spent just four bullet points on Mr. Walker's history and characteristics.[67]

This factor deserves more consideration at resentencing, but the Tenth Circuit's

opinion provides a helpful framework.

The Tenth Circuit notes that Mr. Walker completed a program to overcome

his addiction to alcohol and drugs.[68]  That's an understatement. Mr. Walker

completed Teen Challenge, a rigorous, faith-based recovery program with a

long-term residential component. Teen Challenge is controversial. It doesn't adhere

to the disease model of treatment, which makes it difficult for many participants and

skeptics to accept. But Teen Challenge boasts remarkable success rates compared to

other treatment programs, and it clearly worked for Mr. Walker.[69]  He's been sober

---

[63] *Id.* at ¶ 29.

[64] *Id.* at ¶¶ 29-46.

[65] *Id.* at ¶ 60.

[66] A recent photo of Mr. Walker and his wife is attached as Exhibit A.

[67] *Walker*, 844 F.3d at 1257.

[68] *Id.*

[69] Mr. Walker's records from Teen Challenge, including letters of support from faculty members, are

for three years.

The Tenth Circuit's opinion also notes that Mr. Walker "joined a faith-based community, which provide[s] him with support."[70] Mr. Walker attends church several times a week, including weekday and weekend services, a weekly addiction class, a marriage class, and regular AA meetings—some of which he now leads. He volunteers regularly at church and openly shares his experiences with others. When the church learned about Mr. Walker's resentencing, they gathered together and donated money to help cover his traveling expenses. Mr. Walker's church activities demonstrate the kind of person he's become and the value he brings to his community.[71]

The Court of Appeals mentions Mr. Walker's "supportive family."[72] For the first time in his life, Mr. Walker is a genuine family man, complete with "the house, the yard, the dogs," a step-daughter, and a new granddaughter.[73] Mr. Walker's wife, Vicki, who he's known for ten years, has seen him change "from weak to strong."[74] His stepdaughter, Courtney, considers Mr. Walker her father and describes him as "an amazing grandfather."[75]

Finally, the Tenth Circuit points out that Mr. Walker is employed.[76] Mr.

---

attached as Exhibit B.
[70] ECF No. 50 at 6.
[71] Letters of support and AA attendance records from Victory Rock Praise & Worship Center are attached as Exhibit C.
[72] ECF No. 50 at 6.
[73] Transcript of Sentencing Hearing, ECF No. 40 at 27.
[74] *Id.*; a letter from Mr. Walker's wife is attached as Exhibit D.
[75] A letter from Courtney is attached as Exhibit E.
[76] ECF No. 50 at 6.

Walker isn't just working full-time, he's a "valuable part" of Roberts Brothers Painting in Shelby, Ohio.[77]  He's been a loyal employee for over two years. He "comes in early, stays late, and [works] any and all overtime...asked of him."[78]  Mr. Walker's post-offense work history, which includes other long-term jobs before this one, is exemplary.

There's no other way to say it: Mr. Walker isn't the same person he was four years ago. He's not just a serial bank robber. Mr. Walker's post-offense rehabilitation justifies a further downward departure from the advisory guideline range.[79]  It also bears on the other sentencing factors before the Court, including the need for his sentence to protect the public and promote just punishment, deterrence, and rehabilitation.

3.   *The Need for the Sentence Imposed to Promote Retribution, Deterrence, Incapacitation, and Rehabilitation*

Mr. Walker's sentence must advance the penalogical goals of punishment, deterrence, incapacitation, and rehabilitation.[80]  The Tenth Circuit affirmed this Court's findings on specific deterrence and rehabilitation and focused its decision on punishment, general deterrence, and incapacitation.[81]  Mr. Walker will do the same.

A.   Punishment

According to the Tenth Circuit, Mr. Walker's sentence "did not provide any

---

[77]  A letter from Mr. Walker's boss, Dirk Roberts, is attached as Exhibit F.
[78]  *Id.*
[79]  *See* USSG §5K2.0(a).
[80]  18 U.S.C. § 3553(a)(2)(B)-(D).
[81]  *Walker*, 844 F.3d at 1257 ("The district court concluded that a lengthy sentence was unnecessary to deter or rehabilitate Mr. Walker. This conclusion was reasonable.").

punitive sanctions for the two bank robberies."[82]  At the same time, the Court didn't provide any meaningful guidance on this issue. It simply concluded that "33 days in pretrial detention constitutes an unreasonably short sentence."[83]  The Court will have to rely on other authorities and precedent to fashion an appropriate measure of punishment.

Punishment "is not for revenge, but to reform the criminal."[84]  The Sentencing Reform Act embraces that principle. The Sentencing Reform Act doesn't require imprisonment in all cases—not when a lesser sentence will do.[85]  Indeed, the legislative history of the Sentencing Reform Act indicates that Congress felt "it may very often be...that [supervision] under conditions designed to fit the particular situation will adequately satisfy any deterrent or punitive purpose."[86]

Mr. Walker urges this Court to impose a probation sentence. To be clear: probation *is* punishment. It entails "a substantial restriction of freedom," albeit on a different level than imprisonment.[87]  As observed by the Supreme Court:

> [Probationers] are...subject to standard conditions that substantially restrict their liberty...[They] may not leave the judicial district, move, or change jobs without notifying, and in some receiving permission from, their probation officers or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking...Most probationers are also subject to individual "special conditions" imposed by the court.[88]

---

[82] *Id.*
[83] *Id.*
[84] Elizabeth Fry, Journal entry.
[85] 18 U.S.C. § 3553(a).
[86] *United States v. Edwards*, 595 F.3d 1004, 1016 (9th Cir. 2010) (internal citation omitted).
[87] *Gall v. United States*, 552 U.S. 38, 48 (2007).
[88] *Id.*

The Tenth Circuit sees a qualitative difference between supervised release and probation, notwithstanding their functional equivalencies. It's the only way to explain the Court's conclusion that Mr. Walker received "no punitive sanctions" the first time around.

Probation is an appropriate form of punishment in a case like Mr. Walker's, where there's little concern about specific deterrence or incapacitation and imprisonment threatens to derail his rehabilitation. Probation is also more retributive than supervised release because the Court doesn't forfeit any sentencing options in the future. If Mr. Walker violates probation, the Court can impose any sentence up to the legal maximum.[89]

Mr. Walker is also proposing additional measures of punishment, including home confinement and community service. Home confinement and community service will add retributive value to his sentence while also promoting his continued rehabilitation in an effective manner.

B.      General Deterrence

The Tenth Circuit held that this Court "gave inadequate attention" to general deterrence, describing it as "one of the key purposes of sentencing."[90]  On remand, this Court must address general deterrence head-on, but it must do so honestly, keeping in mind what we've learned about general deterrence since the passage of the Sentencing Reform Act.

---

[89]  18 U.S.C. § 3565.
[90]  *Walker*, 844 F.3d at 1258.

15

General deterrence applies utilitarian theory to crime and rests on a critical set of assumptions about human behavior. It assumes we live in a rational world filled with rational actors. It assumes "the pain of legal punishment offsets the motivation for...crime (presumed to be constant across offenders but not across offenses), thereby deterring criminal activity."[91]

But we don't live in a purely utilitarian world. In the real world, rationality is limited by the extent to which an individual can anticipate and consider information necessary to make rational decisions.[92]  And decision-making skills, particularly in the criminal context, are often bound by cognitive limitations and emotional arousal.[93]

So what's the collective wisdom on general deterrence? Experts tell us "there is generally no significant association between perceptions of punishment levels and the actual levels of punishment that the criminal justice system achieves."[94]  The National Academy of Sciences has concluded that "insufficient evidence exists to justify predicating policy choices on the general assumption that harsher punishments yield measurable deterrent effects."[95]  In other words, general deterrence is a laudable but ultimately unrealistic goal in most cases.

---

[91]  R. Akers, Rational Choice, Deterrence, and Social Learning Theory in Criminology: The Path Not Taken, 81 J. Crim. L. & Criminology 653, 554 (1990-1991).
[92]  J. Elster, *Rational Choice*, New York University Press (New York 1986) at148.
[93]  B. Kaufman, *Emotional Arousal as a Source of Bounded Rationality*, 38 Journal of Economic Behavior and Organization 139 (1998).
[94]  G. Kleck & J.C. Barnes, *Deterrence and Macro-Level Perceptions of Punishment Risks: Is There a "Collective Wisdom?"*, 59 Crime & Delinq. 1006, 1031 (2013).
[95]  Brennan Center for Justice, *What Caused the Crime Decline?* 26 (Feb. 2015), https://www.brennan center.org/publication/what-caused-crime-decline.

The authorities cited by Tenth Circuit highlight the aspirational nature of general deterrence and the need to address it squarely and honestly. In *United States v. Medearis*, for example, the Eighth Circuit reversed a five-year probation sentence for a defendant convicted of unlawfully possessing a controlled substance and a stolen short-barreled shotgun.[96]  The Eighth Circuit faulted the district court for imposing a sentence that "would do little to deter others" and simply assumed a prison sentence would have a general deterrent effect.[97]

We see the same kind of uncritical analysis in *United States v. Milo*, which the Tenth Circuit cites for the proposition that "the need to deter others is under federal law a major element in criminal sentencing."[98]  The First Circuit's opinion in *Milo* rests explicitly on the out-dated, utilitarian assumptions underlying the Sentencing Reform Act, even citing the "heightened deterrent effect of incarceration" on the criminal activities of others.[99]

Ironically, the most helpful opinion cited in the Tenth Circuit's opinion is *United States v. Musgrave*, a Sixth Circuit case involving a white-collar defendant.[100]  In *Musgrave*, the district court sentenced the defendant to one day in custody and supervised release following his conviction at trial.[101]  The Sixth Circuit reversed, holding that the defendant deserved more punishment because white collar crimes

---

[96] *Walker*, 844 F.3d at 1257 (citing *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).
[97] *Id.*
[98] *Id.* (citing *United States v. Milo*, 506 F.3d 71, 76 (1st Cir. 2007)).
[99] *Id.* (citing the legislative history of the Sentencing Reform Act).
[100]  *Id.* at 1258 (citing *United States v. Muscgrave,* 761 F.3d 602 (6th Cir. 2014)).
[101] *Muscgrave*, 761 F.3d at 606.

"are especially susceptible to general deterrence."[102]

*Musgrave* illustrates why general deterrence is a significant sentencing factor in some cases but not others. White-collar crimes—and the people who commit them—are "rational, cool, and calculated," making them "prime candidates for general deterrence."[103]  Bank robberies, by contrast—and the people who commit them—are spontaneous and irrational, making them poor candidates for general deterrence.

So what kind of sentence should the Court impose on Mr. Walker to promote general deterrence? Empirical research tell us there's probably no measurable difference between putting Mr. Walker on probation and sending him to prison. Both types of sentences will have the same marginal deterrent effect.

C.    Incapacitation

The Tenth Circuit says there's "value" in incapacitating Mr. Walker, even though "this factor was never mentioned at [his first sentencing hearing]."[104]  The Court's finding is in direct conflict with its opinion about specific deterrence, which compels Mr. Walker to address incapacitation more fully.

There's a direct correlation between specific deterrence and incapacitation. The lower the need to specifically deter, the less need there is to incapacitate. The Supreme Court affirmed this principle in *Gall*, where the defendant's post-offense rehabilitation compelled the "conclusion that imprisonment was not necessary to

---

[102]  *Id.* at 609.
[103]  *Id.*
[104]  *Walker*, 844 F.3d at 1258.

deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts."[105]

The Supreme Court came to a similar conclusion in *Pepper*. Pepper's post-sentencing conduct led the district court to believe he presented a very low risk of recidivism, resulting in a correspondingly low need to impose a sentence that incapacitated him.[106] A low risk of recidivism is a compelling factor in determining "the period of restraint and the kind of discipline" to impose on a particular offender.[107]

With respect to incapacitation and the need to protect the public, the Tenth Circuit's opinion runs afoul of *Gall* and *Pepper*. In resentencing Mr. Walker, the Supreme Court's views on incapacitation should prevail. Mr. Walker is finding success for the first time in his life on supervised release. He continues to pose a very low risk of recidivism. Therefore, there is no need to elevate specific deterrence and incapacitation above other sentencing factors, and there is truly no "value" in sending him to prison.

4.    *The Need to Avoid Unwarranted Sentencing Disparities*

According the Tenth Circuit, Mr. Walker's first sentence "creates an unwarranted sentencing disparity."[108] Resentencing Mr. Walker to probation will solve that problem. First, it won't create an unwarranted sentencing disparity

---

[105] *Gall*, 552 U.S. at 59.
[106] *Pepper*, 562 U.S. at 492.
[107] *Id.* at 1242-43 (internal citation omitted).
[108] *Walker*, 844 F.3d at 1258.

because probation sentences are quite common in bank robbery cases. Second, to the extent there is a disparity between Mr. Walker's sentence and those of other bank robbers and career offenders, the disparity is well-warranted.

The Tenth Circuit faults Mr. Walker for not identifying "a single case in which a career offender or convicted bank robber received a sentence of 33 days (or a comparable period)."[109] In preparation for resentencing, Mr. Walker searched PACER for post-*Booker* bank robbery sentences in the following districts: Arizona, Southern California, District of Columbia, Northern Illinois, Kansas, Eastern Michigan, New Mexico, Nevada, Eastern New York, Western Oklahoma, Oregon, Utah, Eastern Wisconsin, and Wyoming. He found *twelve* time-served sentences and *eleven* cases where the defendant was put on probation.[110]

The final issue is whether putting Mr. Walker on probation would create an unwarranted sentencing disparity. The Tenth Circuit's decision in *United States v. Friedman*[111] doesn't answer that question. Friedman, like Mr. Walker, was a bank robber with an advisory guideline range of 151 to 188 months.[112] The district court varied downward to 57 months based on a gut feeling about him and the Tenth Circuit reversed because of his criminal history, lack of remorse, and because the sentence created unwarranted sentencing disparities.[113]

The critical distinction between Friedman and Mr. Walker is the fact that

---

[109] *Id.*

[110] Mr. Walker is happy to share the judgments in these cases with the Court and the government, if desired.

[111] 554 F.3d 1302 (10th Cir.2009).

[112] *Id.* at 1308.

[113] *Id.* at 1307-14.

Friedman presented "nothing to distinguish [himself] in any way from the run-of-the-mill career offender."[114]  The district court created an unwarranted sentencing disparity between Friedman and other career offenders and bank robbers because the record contained no "genuinely distinguishing factors in Friedman's character and history."[115]

Mr. Walker presents a much different case. Mr. Walker is our district's version Gall and Pepper. He's performed extraordinary well on supervision and any disparity between him and other bank robbers and career offenders is well-warranted and fully consistent with 18 U.S.C. § 3553(a)(2)(6).

### Conclusion

For these reasons, and those presented at Mr. Walker's resentencing hearing, the Court should impose the following sentence: five years' probation—including a substantial period of home confinement—community service, a modest fine, a $200 special assessment, and $3,695.50 in restitution.

Respectfully Submitted:
JOHN EUGENE WALKER

By:    */s/ Adam G. Bridge*
Adam G. Bridge
Assistant Federal Public Defender

Date: March 16, 2017

---

[114] *Id.* at 1309.
[115] *Id.*

21